Our final case of our sitting this week is number 22-10525 Bainbridge v. Director of the Florida Division of Alcoholic Beverages and Tobacco. Mr. Axelman, you have three minutes for rebuttal. Yes, Your Honor. You may proceed. Thank you. Your Honor, if you may please the court, my name is David Axelman and I represent the appellant, the Florida Department of Business and Professional Regulation, including its Division of Alcoholic Beverages and Tobacco, which I'll just refer to as the state for simplicity. As this court knows, this appeal is about the proper interpretation of a consent injunction and specifically it's about the proper interpretation of the phrase vendors and producers, which is a phrase that the district court added to the party's proposed consent injunction. Now the state believes and believed at the time that the phrase vendors and producers refers to vertically integrated wineries. In other words, producers of wine that sell their own wine to consumers at retail and thereby act as vendors of their own wine. On the other hand, the plaintiffs contend now that the phrase is broader than that and it applies not only to out-of-state wineries, but also to all out-of-state wine retailers. Doesn't, wouldn't the time to raise that point have been when the injunction was issued? I mean, your point is well taken. I think it's, I think it's perhaps goes beyond what's required by Supreme Court precedent, but it's been on the books for a long time. Why, why shouldn't this have been dealt with on appeal or a motion for clarification at that point rather than now? It could have been, but it was not required to and there's two reasons for that. First of all, there is no time limit for asking a district court to clarify its injunction. Sometimes a part- Has the district court now clarified that, yep, that's what I meant to say. The district court has not clarified that. In the order on appeal, the district court really only says a couple of things that are discernible I think. First of all, the district court said it's unambiguous, but while saying it's unambiguous, the district court never actually says what it means. The district court just makes- He says, I meant to write it down. He says, I meant to write the words. He doesn't say, I meant those words to mean retailers. Obviously, whenever somebody writes words on a page, the judge means to write the words. That's not really the question. The question is, what did the judge mean when he wrote those words? What was the court's intention when it wrote those words? And that is a question that the district court left unanswered, unfortunately, in the order denying clarification. Let me ask you this. What if we were to conclude, as you say, I guess, that the latest order, the clarification order if you will, is just an inkblot? The district court really didn't say what he meant. He said, I meant to write it down, but we can't discern head from tails what he meant he meant. But still, at that point, that seems like we're not now in 60A land. It seems like we're in 60B land. That's like inadvertence or something, right? That's not like, it's certainly not a clerical error that's evident from what the district court said. Thank you. Yes. So, it is not a 60B issue, and here's the key distinction which is explained in the case law that we've cited. If the court's contemporaneous intent is obfuscated by imprecise language, then it can be corrected under Rule 60A. We assert, and I would like to get to why this is ambiguous, but we assert that when a court writes an ambiguous phrase, its intent is necessarily obfuscated because it could mean this or it could mean that. When the flaw is in the translation of the intent to the written paper that constitutes the order, it's a matter of the court's intent not being clearly expressed. Numerous courts have recognized in the case law we've cited that Rule 60A applies there. The distinction is Rule 60B1 applies when a court makes an actual mistake of fact or a mistake of law. But a court doesn't make a mistake of fact or law when it writes an ambiguous phrase that's susceptible to two different interpretations. Now if the district court had actually said explicitly, the state is hereby enjoined from enforcing this law against out-of-state wineries and also against out-of-state winery retailers, that might be a different question because there the court is specifically stating out-of-state retailers, and if it subsequently decided, okay, you know what, that went too far, that was a mistake, then arguably that is a Rule 60B1 mistake. But a court doesn't make a mistake. So under your argument, Rule 60A applies any time one of the parties later determines that a court order is ambiguous, that the court couldn't have meant what it said, not just clerical errors, but any kind of ambiguity. Well, I don't know if I'd say any time a party says it's ambiguous. I think it applies any time it is ambiguous. And so I think the threat, what has been described by the courts as the threshold question in this scenario is whether it's ambiguous, which is review de novo. And we've explained in our brief why it is ambiguous. Tell me the best case from the 11th Circuit you have that allows us 20 years later to go back where a court has said that it included that language intentionally and for us to say, well, we don't think it's quite clear, so we're going to clarify it. What's your best 11th Circuit case for that? Well, the 11th Circuit case that we've cited on Rule 60A, and I don't know if there is an 11th Circuit case that involves precisely the facts here because these are unusual facts, but this court has recognized that Rule 60A can be used to make what might otherwise seem like important or substantive changes. For example, in the Vauder decision in 1987, this court concluded that Rule 60A actually authorizes the district court to redefine a class. That's not a typo or a clerical error. The problem was that in that case, the class wasn't defined at all, so there was really no way to interpret the order without making that adjustment. And I may be misremembering, I think it was defined and then redefined, but the key point there is that this court said Rule 60A was the appropriate mechanism because the parties had operated, the parties in the court had operated with the belief that the class was going to be defined in a certain way, and that was not clearly expressed in the order. In that case, the summary judgment order did not properly identify the class, so it wasn't clear whether the class had been entered under 23B1, 23B2, or 23B3. And that leads to all sorts of consequences. So that seems a little bit different than this. Well, but in this case, the district court didn't properly define the scope of the injunction because it wrote a phrase that can be interpreted in two different ways. The board has certainly interpreted it one way for a while, right? Well, as we explained in our brief, the contemporaneous understanding of the state as relayed to the Florida Senate and published in a Florida Senate report just a couple months after the injunction issued is that the injunction applies only to wineries. Also, I think it's important to note that the plaintiffs seemingly understood it to apply to wineries for multiple reasons. First of all, we've demonstrated numerous reasons just looking at the party's proposed consent order, which is effectively their settlement agreement, numerous ways in which the plaintiffs were also using the word vendors to refer to vertically integrated wineries. But also, it seems that the plaintiffs understood at the time that it was limited to vertically integrated wineries. And I say that because 13 years later, the plaintiff's counsel on behalf of an out-of-state retailer, not a party to this case, petitioned the state for a declaratory statement and said, we're aware of these statutes that prohibit direct shipment. I represent an out-of-state wine retailer, and we want to know whether that retailer can ship to Florida. Well, if the injunction that had been entered 13 years earlier extended to retailers, then presumably plaintiff's counsel would know the answer and would have told his client, yeah, you're a retailer and you can ship to Florida because that's what the state of Florida said in its declaratory statement. So even plaintiff's counsel, who certainly participated in drafting the injunction, did not understand it to extend to all retailers. Is that just sort of a, what do you call it, like a tu quoque argument where, you know, you're feeling kind of pinched because they're, like in 2018, you recognized, your client recognized a broader interpretation of this injunction. And so you say, well, at the time, though, like even they thought it was a narrower scope. But, you know, we've said, like in an ordinary sort of like contract interpretation cases, the fact that there's disagreement about the meaning of a term does not render it fundamentally ambiguous. Well, but is there, first of all, ambiguity is a determination for this court, and that is a de novo determination. So this court can and should review it and determine as a threshold matter whether it's ambiguous. But just because there's disagreement doesn't mean that there's a meritorious disagreement. I don't think we have heard from the appellees in this case any plausible reason why that phrase extends to retailers. What they've done essentially is what some might refer to as bad textualism. They've extracted that phrase, taken it out of context, and interpreted it in a vacuum. And that is something that this court has rejected. I actually think, so I actually think you're right, that if we were, if we were interpreting this in this order, the whole thing as a statute, that we likely would, at least I'll speak for myself, I likely would. I hope I would be a good textualist and not a bad textualist. I would say, look, the declaratory judgment piece of this talks about wineries. It followed on the heels of Granholm, which was about wineries. And so when the injunction, we have to read this phrase in the injunction piece of the order in light of what sort of, you know, preceded it. The problem for me is that that's, we're not interpreting this order like a statute. It's not sort of good or bad textualism. It's like, do you get the benefit of Rule 60A or don't you? Well, so two things there. We're not interpreting a statute, but we are interpreting a contract because the Supreme Court has explained that a consent order, not just as a consent, whether there's a consent decree or not, it's a consent order. And the court has explained a consent order is to be interpreted essentially as a contract and certain aids to construction are proper, ITT continental banking case. So if you took action, if the state took action against a non winery retailer, then I think the courts would interpret the injunction and see if it applied. But under Rule 60A, I don't see, once we know it wasn't a mistake or an oversight, then I don't see how the district court had the ability to do what you want. Well, so two points there. First of all, as the Supreme Court has repeatedly explained, the proper course of action for an enjoined party that's not sure about the scope of the injunction is not to go ahead and act at its peril and then explain itself to the court in the context of a contempt proceeding. Instead, the proper course of action is precisely what we did to go to the district court that issued the injunction and say, Hey, this is ambiguous. We're not sure if we can do this. Here's what we think it means. Please clarify or confirm that in the, in the Supreme Court's words, the proper course of action is to seek clarification, modification or construction of the injunction. And that's what we did. So we're not, yes, we're, we'd be in a bind, but we are not supposed to take that risk. And that's why we haven't taken that risk. Also, I want to emphasize, regardless of Rule 60A, the courts always have inherent authority to clarify their own injunctions. If it, if the parties understand it one way, and then something happens years later and the original meaning gets lost somehow along the way, and now the parties think it's ambiguous, they can always go back to the district court and the district court can always grant clarification. That is separate and apart from Rule 60. Frankly, the primary reason we cited Rule 60A is because there is a Fifth Circuit case from 1980, which of course is binding precedent in this circuit, which seemed to suggest, and this is Cook versus Birmingham News, seemed to suggest that Rule 60 provides the only avenue for clarifying an injunction. Now I'm not entirely sure if that's correct, given all the Supreme Court case law that says, yes, a court can and should clarify its injunctions. But to the extent that Rule 60 really is the only avenue, it's Rule 60A that applies because we're dealing with an ambiguous phrase. We're not dealing with a substantive error in judgment. Let's say, let's say that, that a court can't, does have inherent power to clarify its injunctions. What would be our standard of review over a court's decision to clarify or not? Well, so that's maybe a tricky question. I think to the extent that it requires interpretation of the injunction, that is certainly de novo. Whether or not- The court's decision to exercise its authority or not. I'll say this. Even if that's abuse of discretion, this court has recognized that a court does abuse its discretion when it reaches a clearly unreasonable decision. And I believe it would be clearly unreasonable for the court to say, as it did, that this is unambiguous, and also to say that, yes, this extends even to all retailers, notwithstanding all the evidence we've cited, the contemporaneous evidence we've cited, that it is limited to wineries. Thank you. Mr. Tanford. Thank you, Your Honor. And may it please the court. This case was filed back in 1999, and in 2005, the district court held that two Florida statutes, two particular statutes prohibiting out-of-state wine suppliers were unconstitutional as long as the state allowed its in-state suppliers to do so. The terms of the injunction were absolutely clear. First of all, the court clarified that this applied only to wine and not to other forms of alcoholic beverages. Secondly, it said that the court was prohibited from enforcing the statute as against vendors and producers. Those are the words it used. Both of those words are not ambiguous. They appear in the statutes. In the statutes at the time, vendor was defined by Florida statutes in 561.14.3 as various kinds of retailers who sold wine directly to consumers. Producers, they don't use the word winery, producers was a separate category of licensing. When the court used the phrase vendors and producers, it was referring specifically to terms that appeared in the Florida statutes at the time. What do you make of the colloquy that we were having with your adversary there at the end about if all we're concerned with here is interpreting this contract, sort of as if it were a statute, but it's a contract, then we should interpret the injunction piece of it at the end in light of the declaration, in light of Granholm. Those are obviously limited to wineries, so why would we think that this last clause suddenly broadens the scope of the injunction? First of all, I don't think we're interpreting a contract. As this court knows, in issuing the terms of an injunction, not the judgment, in issuing the terms of the injunction, the district court is not bound by any agreement among the parties. Indeed, the parties cannot contract or stipulate to a question of law. I guess just from a common sense perspective, I'm asking if we know the background of this consent order was Granholm, and we know that the declaration says wineries, isn't it just sort of sensible to think that the injunction piece of it would follow from the body of the order? I mean, what, maybe this is a stupid question, but sort of by what legal authority would the district court have broadened to issue a declaration that says X and an injunction that says like X plus 50? This case, like I said, had been filed in 1999, six years prior to Granholm. It had been litigated in the district court, it had been up to this court on appeal. So there was a substantial amount of litigation over this, in this case, prior to the Supreme Court's decision in Granholm. So and in Granholm, getting into the merits, Granholm did not say that its decision was limited to wineries. The facts of that case involved wineries, but Granholm specifically said that it was unconstitutional to discriminate against out-of-state sellers and shippers. It used the word, it used multiple terms to refer. Now the fact that after the Granholm decision, the state threw in the towel, because it had up to that point, I think the question of the balance between the Commerce Clause and the 21st Amendment was up in the air. That was sort of the issue in which it had been litigated. So then we come back and there are discussions among the parties, there are discussions with the court, and the court ends up entering an injunction. The nature of the case, in our brief we cite back to the complaint specifically addressed the broader issue. Under the Florida statutory scheme at the time, the umbrella term was suppliers. Suppliers was anyone that sold alcohol at retail to consumers. Within that category, within that term, there were two categories, the wineries that sold out of a retail sales room and the wine shops that sold out of a retail sales room. And the litigation had concerned both of those, and Judge Whittemore had been involved in that entire process leading up to Granholm. So I guess what you're saying is that it's not that the injunction is a mismatch for the case, the declaration is a mismatch for the case. When the declaration somehow shrunk the case to wineries, that was the surprise, not that the injunction expanded the case beyond wineries. I think that's right. And I think that Judge Whittemore, I mean, there's a perfectly good argument at the time that Judge Whittemore sort of cut and pasted language from the motion for an agreed order. And he cut and pasted that into sort of the reasoning process of his final order, and then crafted his own terms of the injunction. I think there's a perfectly good argument at the time that could have been made, which is, whoa, Judge, didn't you overstate this? Don't you mean to limit this to wineries? But that argument was not made. They did not appeal. They did not file a Rule 59 motion within 28 days. They did not file an inadvertent or mistake motion under Rule 60B1 for 16 years. And in that process, they themselves issued an opinion that yes, excuse me, yes, the injunction applied to vendors, which are basically the wine shops that sell directly to consumers. Setting aside what the right interpretation of this injunction is, do you think that district courts have any inherent authority to interpret their injunctions when a question comes up? I understand you don't think there's a question here, but sometimes questions do come up where an injunction is not clear. What authority do district courts have to deal with that situation? They have, I would say, three types of authority. One is the authority specifically granted to them by Rule 60, assuming we're past the 28-day period of Rule 59. And that includes 60A, where they can look and see, is this a clerical error? That is, something mistranslated between the judges' chambers and the court? Right. But in my hypo, there's no clerical order. There's 60B6, or for any other reason. And I think there is inherent power to clarify an injunction. There's actually only one case out of the district court in this circuit that actually used the term clarify. There are a number of other cases that have talked about that. Almost all of those cases have occurred during the course of litigation in which what they were clarifying were the terms of a preliminary injunction. There are a couple of scattered cases from California that I find, I'm sorry, I did this last night when this question occurred to me in the middle of the night, that all of them have been clarifications by the original parties while the original piece of litigation was going on, or at least up until the one case that says, if an appeal is actually pending, the district judge retains jurisdiction to clarify the scope of an order or an injunction. So they clearly have that inherent authority that does not resolve what the time frame is for doing that. In the course of this, in their brief, the state has chided us for not addressing questions about the merits and has tried to argue that our failure to do so means somehow we agree with their position that everybody agreed that this was the proper interpretation at the time. I was one of the attorneys involved in that case and it was not, it cannot be said to be the case. And in any event, you don't get to the merits unless there's a vehicle for doing it. And the question is whether or not the Judge Whittemore, this didn't go back to a different judge 16 years later, it went back to the very judge who issued the original injunction. And Judge Whittemore said, no, this is not, this was not a mistake. It was not, it was not a clerical error. This is essentially arguing to me that I made a mistake, a mistake of law, a mistake of the application of facts to law. In fairness, I guess, though, his response, which I think descriptively is accurate, is that if you read the latest Whittemore order, all it really says is like, I meant to put pen to paper. It doesn't say, and by those words, I meant the following things. That's right. But it takes, if he meant to put the words to paper, it takes it out of the realm of Rule 68 and puts it, the only vehicle that outside of, after a final judgment is entered, that takes care of all the cases that allow clarification while the case is pending. You know, sometime after all litigation over the matter has ceased, the vehicle is Rule 60B. I guess I thought that the parties sort of had come to some agreement in the briefing in this case that sort of the fundamental divide between 60A and 60B is whether or not the initial order accurately captures the court's intent. If it did, and the court has changed its mind, then we're on the B side of the ledger. If it didn't, then we're on the A side of the ledger. And if the court really hasn't told us what its intent was, then might we still possibly be on the A side of the ledger? I don't believe so. I don't see any way. I mean, there are cases on the A side of the ledger that say specifically that it cannot be used to change the terms, to change the substance of an injunction. This injunction, on its face, applies to both wineries that sell at retail through their sales rooms and wine shops that sell at retail through their sales rooms. That's what it says. It's not an ambiguous term because it's defined in the statute. So even if all that were correct, it can't be 60A because this court has said that that's not a vehicle for changing its terms. It's not, as this court pointed out, as this panel pointed out. It's not because Whittemore did not define the term. It's not as if there was a blank there that he was being asked to fill in, as in the class action case. Because as I read this one, the motion under 60A, he responded to that and said, nope, no clerical mistake, no oversight, no omission. And so that, speaking only for myself, seems to answer the A question. I wonder that Florida did not move under B6, but I wonder if at least they would have had an argument under B6, which you point out, any ground that justifies relief, and they could have made these arguments, you know, this isn't clear, we don't know what to do. And then we would review the court's response to that sort of motion, right? Well, yes, but had they been under B6, under this court's somewhat vaguer interpretations, that is also time barred. There also is a time limit under Rule 60B6, because you go to 60C1, and it says items 1, 2, and 3 are subject to the one year. Other items are just within a reasonable time. This circuit has interpreted reasonable time to mean a reasonable time after the division, the party has been aware of the content of the injunction. It's been aware of the content of the injunction for 16 years. It wasn't, they were a party to it. They looked at the piece of paper. I know you think that this is not the case here. So don't worry, you're not conceding anything about this case by answering this question. But this returns a little bit to my earlier question, which is, what if there is a case where the injunction at the time seems perfectly understandable, and then 20, 30, 40 years later, you know, we know society has changed a lot. There are things that none of us could have imagined when we were kids that now are very commonplace. What if a situation arises, and it's not clear how the injunction applies to that new situation? Does a party have any ability to receive clarification at that point? I'm troubled by the use of the word clarification. That is, they certainly would have the ability, and following the Tennessee wine decision in these various wine shipping cases that got referred to at least in the brief in 2019, the parties in the Fifth Circuit, the Attorney General, brought a motion, and I don't remember the procedural vehicle, to revisit an injunction even older than this one that struck down an anti-direct shipping law on Commerce Clause grounds, asked them to reconsider that in light of the new Supreme Court case. The Fifth Circuit said, we can do that, but we denied it. So certainly if there were a substantial change of law, I can see it, but the problem with some of these is, this is a law that affects how businesses operate, how wine is sold and how businesses set up an operation that is designed to sell wine online and ship it into Florida, complying with Florida regulations, and it's not estoppel in the actual sense, because a lot of times we're talking about people, about businesses who are not parties to the original case. But certainly since 2018, when the case was filed on behalf of Arnold's Wines to essentially do what they did and clarify the scope of this injunction, they're saying, we're about to invest in being able to ship wine to Florida, it's a big market, there are a lot of people in Florida that like wine, there are a lot of people that, I was surprised at the amount of traffic around here coming from Indiana, that don't want to go wandering around in their car, that want it shipped. And they said, we want to make sure, before we invest the money, that we can do that. And the division responded, yes, you can. So that clearly, if nothing else, that, whether it's called judicial estoppel, or equitable estoppel, or just fundamental fairness, there's a lot at stake. And that's why I think, barring some significant event, I don't think that one should be allowed to go back 16 years later. That's why the courts have the principle of finality. Thank you. I'd like to just address a few points here. Mr. Tanford said that the court in Granholm, I think, held that the statutes were unconstitutional as applied to suppliers. That's not what the court said. The court said that the statutes were unconstitutional as to wineries. And I want to just read the very first sentence of the Supreme Court's opinion in Granholm. Quote, these consolidated cases present challenges to state laws regulating the sale of wine from out-of-state wineries to consumers in Michigan and New York. The parties described the Granholm case to the district court as a case about wineries, and the Supreme Court itself said that Granholm was a case about wineries. I'm going to stop you because you have limited time, but I think, at least for me, the bigger question is not how to interpret Granholm, but whether the district court or this court has any jurisdiction to offer the sort of relief that you're asking for. Sure. So first of all, briefly, with regard to Rule 60A, I just want to emphasize that unlike 60B, 60A says at any time. Rule 60B says reasonable time, and for the first three prongs, it has to be within a year, but still reasonable. That's not what Rule 60A says. Rule 60A says at any time. And by the way, although not directly relevant to the 60B4, even though it says reasonable time, the courts have said that can be addressed at any time because a judgment's either void or it isn't. Point being, Rule 60A intentionally does not say reasonable time. It says any time. And Judge Grant, I recognize you have some skepticism about Rule 60A, so just again going back to the court's inherent authority, again, the court always has authority to clarify the injunction in a proper case. But even if you're right about that, the question is if, I mean, you can always ask the court to clarify, but when the court says no, then what's the remedy? I mean, that's really what we need to focus on. Well, the court said no because the court said it's unambiguous. And that was a legal determination and a legal error that this court can review de novo and conclude as a matter of law that it is ambiguous. And I think at that point, it follows that if there is an ambiguous injunction, the state is entitled to clarification. Did you raise inherent authority in your motion? I thought it was just 60A and 60B. Not explicitly, however, that argument was preserved, and I'll just cite a few cases briefly. First of all, in the Supreme Court's Yee v. Escondido decision in 1992, which was a takings case, the Supreme Court explained that even though the plaintiff hadn't clearly raised a regulatory taking claim in addition to its physical taking claim, nonetheless, and even though the Court of Appeals hadn't clearly passed on the regulatory taking claim, nonetheless, it was properly preserved because it was just a separate argument in support of a single claim. In Collier v. Jones, a 1990 decision of this court, footnote 3, although we normally don't consider arguments on appeal that haven't been presented to district court, the argument raised by appellate counsel is sufficiently similar that we're confident that the ruling implicitly encompassed such an argument. And then I'll also cite Volvo Construction Equipment, 386F581 from the Fourth Circuit, in assessing whether an issue was properly raised in the district court, we are obliged on appeal to consider any theory plainly encompassed by the submissions in the underlying litigation. I'm sure we all are. I'm aware of that line of cases, and I find this distinction between waivable issues and unwaivable arguments quite difficult to get my head around. But I mean, it does seem like invocation of a different subsection of a rule might put you in issue land instead of argument land. Right? I mean, like, to say 60A, we have a 60A position, and we have a 60B6 position, those seem to me rhetorically different in a legal sense. I'll add this. This court and others have repeatedly recognized that labels are not dispositive. So for example, a Gulf Power Company v. Coal Sales, which we've cited in our brief, we look beyond the form of the motion to the substance of the relief requested. And what that means is this court can say, you know what, you really focused on 60A in the district court, but we think this is really more properly just an inherent authority to clarify the injunction case, or we think this is a 60B6 case. This court can label the motion however it wants to, based on the actual substance of the motion, which at the end of the day was simply a request for clarification. If I could make one very brief final point, I just want to emphasize that courts have sit in a different posture. We've cited some Seventh Circuit case law on that about how democracy doesn't allow an elected official to bind the polity forever. And the reason why that's relevant here is just because a prior administration candidly may have been careless and maybe waited a little bit. As a practical matter, if we are denied clarification, we will have this injunction hanging over our heads. And as we've explained in the brief, if we don't want to have to defend our interpretation in the context of a contempt proceeding, we will have to continue to forego enforcement against retailers, even though it's undisputed that the court never ruled this unconstitutional as applied to retailers. Can you pass a new law? I know that's obviously not a light lift, but it's the state, the injunction says that you can't enforce those particular code sections. How about a new code section? Here's why we can't.  to retailers. It's not like the court said it's unconstitutional as applied to retailers. Here's why. And now the legislature can go back and fix it. The court never said it's unconstitutional as applied to retailers. So to me, it doesn't seem that there would be any legislative fix. We would just. I think it's a statute that says here, here is what the state can do to out-of-state retailers. Well, we already have. Those are the underlying statutes at issue in this case, which prohibit out-of-state retailers from shipping directly to Florida consumers. Those statutes are on the books. Those are the statutes that led to this litigation in the first place. And of course, you know, subsequent legislation can't, you know, overrule an injunction. The point is just that if the court never said there was anything wrong with the law as applied to retailers, then there's nothing to fix legislatively. For all those reasons, I would ask the court to reverse. Thank you. Thank you, counsel. Court is adjourned.